NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GENERAL TRUCK DRIVERS, WAREHOUSEMEN, HELPERS AND AUTOMOTIVE EMPLOYEES, LOCAL 315, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Respondent.

No. 75–3474.

United States Court of Appeals,
Ninth Circuit.

Oct. 12, 1976.

Michael S. Winer, Atty. (argued), of NLRB, Washington, D.C., for petitioner.

Kenneth L. Silbert (argued), of Brundage, Neyhart, Beeson & Taylor, San Francisco, Cal., for respondent.

Before MERRILL, TRASK and CHOY, Circuit Judges.

MERRILL, Circuit Judge:

Pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., the National Labor Relations Board has applied for enforcement of its order issued against General Truck Drivers, Warehousemen, Helpers and Automotive Employees, Local 315 (hereinafter "the Union"), with reference to an alleged unfair labor practice which occurred in Concord, California. The Board's decision and order are reported at 217 N.L.R.B. No. 95 (1975). The Board found the Union violated § 8(b)(1)(A) of the Act because it breached the duty of fair representation it owed an employee who was laid off.

The facts upon which the Board supports its order are undisputed. The Union and two other unions had a collective bargaining agreement with an association of employers which included Rhodes & Jamieson, Ltd. (hereinafter "the Employer"), who employed Ted Holman, whose rights are the subject of this proceeding. Prior to 1972 the collective bargaining agreement did not provide for bumping rights. In 1972 the collective bargaining agreement added bumping rights by providing:

> "Where jobs or equipment are eliminated, senior employees shall be reassigned by the employer to another classification with full seniority rights subject to employee qualifications. Local 315 reserves the right to apply this principle by individual employer."

In October, 1973, the Employer announced its intention to close the delivery service for the building services department, in which Ted Holman was employed as a dump driver. The Union had not yet determined whether to apply the bumping-rights principle to the Employer. It decided that it should conduct an election among its members employed at the Concord plant. The ballot asked:

"Do you want the warehousemen, yard men, flat rack and dump drivers to be re-assigned, with their full seniority, as ready-mix drivers?"

The member-employees voted twenty to eight against bumping rights and Ted Holman was terminated. Although the Employer desired to reassign Holman to another job, the Union decided not to permit him to be reassigned because of the election results.

Holman appealed that decision to the Union's executive board, claiming the referendum was invalid and that he had a right to reassignment under the collective bargaining agreement. The executive board upheld Holman's appeal "because a vote was taken after the fact that an operation was being eliminated and that a fair vote could not be taken at this time." The Union's business agent appealed the executive board's decision to Teamsters Joint Council No. 7 and the Employer was informed that Holman could not be reassigned pending the appeal. Holman died shortly thereafter. The appeal was withdrawn and Holman's claim was dismissed by the Union as moot. Holman's wife then filed a charge with the Board that the Union had failed to meet its duty of fair representation.

The Board, with one member dissenting, held that the Union had failed to represent Holman in a fair and impartial manner in violation of § 8(b)(1)(A) of the National Labor Relations Act. It ordered the Union to make Holman's estate whole for any loss of wages or other benefits incurred by virtue of the unfair labor practice, to cease and desist from the practice and to post appropriate notices.

In *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the standard set for the duty of fair representation is that a union shall not represent its members arbitrarily, discriminatorily or in bad faith.

The duty of fair representation here was not of the familiar type having to do with the Union's responsibility to process grievances against the Employer. Here the duty was in relation to collective bargaining with the Employer: the question was whether a certain provision should be included in the contract. This duty called on the Union to decide whether, in relation to this Employer, bumping rights should be added to the seniority rights otherwise provided by the collective bargaining agreement. In making this decision the Union was required to decide between the conflicting interests and views of the employees it represented.

To fulfill its duty of fair representation to those whose views and interests are in the minority, "the union must give fair consideration to their interests. Yet it should not be required to adopt a fragmented bargaining position or to take a neutral position on conflicts. Instead, it must be allowed to resolve conflicts internally and present a unified front to the employer. The DFR, [duty of fair representation] however, was designed to compensate employees for their lost opportunity to bargain for themselves. To ensure that the union will represent the minority as well as the majority, the duty should require that the unions give fair consideration to minority interests. In essence, this standard requires that unions adhere to rational decisionmaking processes." Clark, *The Duty of Fair Representation,* 51 Texas L.Rev. 1119, 1131 (1975).

The Board concluded that the Union, in basing its decision on a vote of employees taken after an occasion for bumping had

arisen,[1] on a ballot phrased as this one was,[2] had failed to represent Holman's interests fairly; that the Union's decision had been based not on the views of its members as to whether the bumping principle in general should prospectively be approved—the issue that the Union was called upon to decide—but on the views of its members as to whether Holman, and those in his position faced with layoff, should on this occasion be permitted to exercise a right to bump.

We do not intimate that it would be improper for a union to use an election process to make a decision under other circumstances. However, we agree with the Board that to base its decision as to whether the bumping principle should in general be applied to this Employer upon an expression from the employees so limited in scope and focus constituted arbitrary Union action without rational basis prejudicial to Holman, and a failure fairly to represent his interests.

We conclude that the Board's order is entitled to enforcement. It is so ordered.

---

1. The Board decision read in part:

"What is striking, however, is that the vote was taken after the layoff was announced, and whether or not the voters knew all the details of the layoff each presumably knew whether his own job was scheduled for elimination. Those not scheduled for layoff would naturally think twice before voting for bumping rights just then. And most importantly, the voting on this issue was limited to those, and only those, who would be adversely affected by a vote to permit the bumping."

2. The Board decision read in part:

"As far as the record shows, only dump truck drivers were included in the announced layoff. Yet the ballot, which was given to the voters after the announcement of the layoff, asked the voters whether they wanted 'the warehousemen, yard men, flat rack and dump drivers to be re-assigned, with their full seniority, as ready-mix drivers.' The record does not tell us on what information this characterization of the potential impact of the bumping was based. It appears to be grossly inaccurate as a description of the announced layoff and substantially incomplete as a description of the contractual bumping provision, omitting as it does the mutuality of the right."